IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ADAM SALM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-985 (RDA/LRV) |
| | ) | |
| TODD BLANCHE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendants' Motion to Dismiss for Failure to State

a Claim (the "Motion"). Dkt. 29. This Court has dispensed with oral argument as it would not aid

in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully

briefed and ripe for disposition. Considering the Motion together with the Second Amended

Complaint (Dkt. 26), Defendants' Memorandum in Support (Dkt. 30), Plaintiff's Opposition (Dkt.

32), and Defendants' Reply (Dkt. 35), this Court GRANTS the motion for the reasons that follow.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff Adam Salm ("Plaintiff"), who is represented by counsel, filed the instant case

against Defendants Todd Blanche,[2] the U.S. Department of Justice ("DOJ"), and the Drug

Enforcement Administration ("DEA"). Dkt. 26. Plaintiff is a Virginia resident who has been

---

[1] For the purpose of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Todd Blanche has been substituted for Pamela Bondi.

diagnosed with physical disabilities tied to orthopedic injuries. *Id.* ¶ 6. On October 25, 2018, the

Department of Veterans Affairs determined that Plaintiff had a 60% service-connected disability.

*Id.* ¶ 11. Plaintiff's disability involves "fluctuating levels of chronic pain," "sinusitis," "painful

motion of the shoulder post right clavicle repair," "thoracolumbar strain," and "tinnitus in his lower

back." *Id.* ¶ 12.[3]

In the summer of 2019, Plaintiff attempted to join the DEA as a Basic Agent Trainee

through Basic Agent Training Class in Quantico, Virginia. *Id.* ¶ 14, 16. On or around June 2019,

Plaintiff alleges he had an initial physical appointment at DEA headquarters during which he

disclosed his military service-related injuries before being hired as a Basic Agent Trainee

("BAT"). *Id.* ¶ 13. Plaintiff received his final offer letter on July 22, 2019. *Id.* ¶ 14. On August

18, 2019, Plaintiff started Basic Agent Training Class in Quantico. *Id.* ¶ 16.

To graduate from the BAT program, all BATs must pass a Physical Training Test ("PTT")

which involves a 1.5-mile run, pushups, sit-ups, and a 300-meter sprint. *Id.* ¶ 17. If a BAT fails

twice, they are "deemed unprepared for training" and dismissed to their office of hire. *Id.* ¶ 18. If

a BAT is dismissed, they are deemed "recycled" for performance shortcomings and can take the

test again with a later class within thirty to forty-five days. *Id.* ¶ 19. But if a BAT suffers an injury

or illness that prevents them from participating in the training, the BAT may be "guaranteed for

medical recycle," meaning that they are not deemed recycled for performance shortcomings and

can "return with a subsequent training class to take the PTT without accruing additional failed

PTTs." *Id.* Plaintiff alleges that he disclosed his disability to DEA Medical and Human Resources

several times in 2019, including during a May 31 medical appointment, via disclosure from his

---

[3] The Court notes that tinnitus is typically a condition characterized by the perception of noise, such as a ringing or buzzing in one or both ears.

physician on June 12, when he sought medical attention from the DEA health unit on August 19, and via a resume and VA Disability Letter transmitted to the agency at unspecified times. *Id.* ¶ 20.

On August 19, 2019, Plaintiff saw Dr. Puneet Narayan, and Plaintiff told Dr. Narayan that he had "lower back – lower neck, [and] upper back pain with tingling in left upper extremity." *Id.* ¶ 21. Plaintiff also informed Dr. Narayan that he had experienced similar symptoms in January 2019. *Id.* Dr. Narayan noticed that Plaintiff could only move his neck 20 degrees to the left and to the right. *Id.* Plaintiff alleges that Dr. Narayan told Plaintiff to get an X-ray and to return the next day if he was still in pain. *Id.*

On August 20, 2019, Plaintiff reported symptoms of neck and back pain, took the PTT "despite severe pain," and failed. *Id.* ¶ 22. After the initial PTT, Plaintiff sought medical care from the athletic trainer, Jessica Williams, to whom Plaintiff reported "pain in his neck" beginning "up in the back of his head across his shoulders" and "some pain down in his lower back." *Id.* ¶ 23. During this meeting, Plaintiff also informed Williams that he had a history of lower back issues and received disability benefits from the military because of this. *Id.* Williams diagnosed Plaintiff with a trapezius spasm. *Id.*

The next day, Plaintiff was experiencing worsening pain, including breathing problems, and Williams referred Plaintiff to Dr. Dania Kiselica. *Id.* ¶ 24. During his appointment with Dr. Kiselica, Plaintiff reported that his pain was "so intense that [he] didn't feel capable of exercising." *Id.* ¶ 25. Dr. Kiselica prescribed Plaintiff ibuprofen and cleared him for duty. *Id.* Plaintiff also requested x-rays, which Dr. Kiselica believed were not necessary. *Id.* During the appointment, Plaintiff also requested a "medical recycle" due to his pain, to which Dr. Kiselica responded: "No. Doing a medical recycle is a difficult process to do." *Id.* ¶ 26. Plaintiff alleges that later that day, Dr. Kiselica emailed colleagues saying that Plaintiff "failed the initial PT test

3

yesterday and seems to be ramping up symptoms ahead of retaking the PT test in two days, perhaps in an effort to get medically recycled before the retest." *Id.* ¶ 27. Dr. Kiselica also said that it concerned her that "there is a possibility that [Plaintiff] may try to obtain a medical recycle so that he does not have to take the PTT again." *Id.* Plaintiff alleges he previously completed the PTT "with no issues" and requested a recycle in order to delay taking the PTT "without jeopardizing his health," as medical recycles allow a BAT to leave the Academy to heal before returning with a new class of BATs, and otherwise stop initial PTT failures from "damaging the record of the BAT." *Id.* ¶ 28. Dr. Kiselica further emailed DEA Health Unit officials, accusing Plaintiff of being a "very difficult historian," because he "ask[ed] questions that are not typical of a student on day 3 of the academy" or being potentially "scatterbrained" and not disclosing prior medical conditions clearly. *Id.* ¶ 29.

On August 22, Plaintiff alleges his pain worsened to an 8.5 out of 10. *Id.* ¶ 30. Plaintiff received athletic training from Williams in the morning and saw Dr. Kiselica in the afternoon. *Id.* When Plaintiff asked again about a medical recycle and stated that he was trying to prevent injuries, Dr. Kiselica replied that "this is a tough academy" and "people have taken the fitness test in worse condition that what [he was] in." *Id.* That night, Plaintiff told SA Boleky that he was not feeling well and asked to go to urgent care. *Id.* ¶ 31. Plaintiff felt Boleky and "his other class counselors" did not believe him, as they asked Plaintiff if he "really wanted to be there," but agents under Boleky's direction drove Plaintiff to urgent care that night anyway. *Id.* An urgent care provider performed an x-ray of Plaintiff's chest and a physical examination and diagnosed Plaintiff with back spasms, prescribed Prednisone, and recommended a three-day restriction of physical activity. *Id.* ¶ 32.

On August 23, 2019, Plaintiff provided the evaluation from urgent care to Williams and Dr. Kiselica. *Id.* ¶ 33. Williams said, "Dr. Kiselica can overturn this" and gave Plaintiff the impression that she did not believe Plaintiff. *Id.* Later that day, Dr. Kiselica evaluated Plaintiff right before the PTT re-test, noted his symptoms as "unchanged," overturned the urgent care evaluation, and cleared Plaintiff for duty. *Id*. ¶ 33.

That day, Plaintiff was still experiencing pain in his upper/mid back, neck, and shoulder blades, feelings of lightheadedness, blurred vision, coughing, chills, shortness of breath, tightness around his lateral posterior neck, and fatigue. *Id.* ¶ 34. Plaintiff informed SA Bellomy and SA DeLeo that he was in pain. *Id.* Nonetheless, they instructed Plaintiff to sign a release form saying, "I have no injuries or illness that will prevent me from participating in the event or hinder my performance in the DEA [PTT]." *Id.* ¶ 35. Plaintiff alleges that, when he asked what the consequences would be if he did not sign the form, the Special Agents said it "probably wouldn't look good for him" if he didn't sign the form or take the test, making Plaintiff feel he "would be fired or face some other reprimand that would have undercut his career if he did not sign the medical release form." *Id.* Plaintiff alleges he was then "forced" to take the PTT re-test, despite reporting and experiencing "continuous severe pain," and again failed. *Id.* ¶ 36.

After his failure, Plaintiff went to the Washington, DC VA Medical Center after his pain reached a level of 9.5 out of 10. *Id.* ¶ 37. There, providers diagnosed Plaintiff with "myalgias post exercise," gave Plaintiff two shots of anti-inflammatory medicines, prescribed Diazepam for three days, conducted x-rays and MRIs, and instructed him to "rest for one week" and see a physical therapist. *Id*. Between August and December 2019, Plaintiff received physical therapy for his back, arm, and neck pain. *Id.* ¶ 39.

5

Because he failed the PTT, Plaintiff returned to the DEA Washington District Office as a PTT recycle. *Id.* ¶ 40. While there, Plaintiff's first line supervisor was Special Agent Tyrone Guyse, and his second line supervisor was Jerome Sampson. *Id.* ¶ 43. Plaintiff was initially slated to take the PTT again on October 14, 2019, but his request for medical delay was granted, and his test was rescheduled for December 16, 2019. *Id.* ¶¶ 41, 42, 56.

During this time, Plaintiff provided information related to his health to Guyse, who then sent the information to the Health Unit. *Id.* ¶ 44. Plaintiff was not given a direct contact within the Health Unit or at Headquarters. *Id.* Due to his continued pain, Plaintiff asked to be reassigned to other vacant positions for which he was qualified. *Id.* ¶ 45. Plaintiff was eligible for preferred and non-competitive hiring authority at the agency as a disabled veteran. *Id.* ¶¶ 45-47. Plaintiff was interested and open to any position at DEA, including an administrative position, an intel research specialist, a diversion investigator, or any other position he would qualify for. *Id.* ¶ 48. Between August 2019 and January 2020, Plaintiff asked his supervisors, Guyse and Sampson, to be reassigned biweekly. *Id.* ¶ 49. Plaintiff also requested contact information for someone in the Human Resources Department. *Id.*

On August 26, 2019, Plaintiff contacted the EEO Office to complain about discrimination due to his disability in that he was denied medical accommodation and required to take the PTT as part of the employment application process. *Id.* ¶ 38. Plaintiff alleges Guyse knew Plaintiff felt he was treated unfairly by the DEA Health Unit and knew Plaintiff contacted the EEO on this date. *Id.*

On or around September 13, 2019, Plaintiff applied for an Intelligence Research Specialist vacancy. *Id.* ¶ 63.

Plaintiff alleges that, by October 4, 2019, Human Resources Specialist Susan Gearhart-Marshall knew that Plaintiff had filed an EEO complaint. *Id.* ¶ 50. On October 17, 2019, Plaintiff filed a formal EEOC discrimination complaint, alleging the agency discriminated against him on the bases of disability (residual effects of shoulder injury, thoracolumbar strain) and reprisal (prior protected EEOC activity). *Id.* ¶¶ 51, 64.

On November 1, 2019, Plaintiff's doctor cleared him for physical activity. *Id.* ¶ 53.

On December 2, 2019, Michael Daly emailed Gearhart-Marshall to inquire whether Plaintiff applied for the Intelligence Research Specialist position. *Id.* ¶ 65. On December 4, 2019, Gearhart-Marshall replied, stating that Plaintiff did not meet the "bio-data assessment cut-off," and thus was not considered for the position. *Id.* Plaintiff was not notified that he did not meet the qualifying score for the assessment. *Id.*

Also in December 2019, Guyse told Plaintiff that Plaintiff would take the PTT at Quantico, instead of Howard University, where other non-BATs took the PTT. *Id.* ¶ 54. This change in location required Plaintiff to take public transit to his workplace, drive to Quantico with SA Sampson, which took over an hour, and then wait for the DEA Cadre to arrive. *Id.* The Howard location was a twenty-five minute drive from Plaintiff's home and a ten-minute drive from the workplace. *Id.*

On December 16, 2019, Plaintiff was the only individual taking the PTT at Quantico, and he underwent the PTT there amid "very cold" conditions and a "snow and ice storm" in the area. *Id.* ¶¶ 56, 57. When he arrived, he saw black ice on the track, which he alleges was "slippery and icy." *Id.* ¶ 58. Plaintiff claims he did not pass the PTT's sprint portion due to the poor conditions. *Id.*

On December 20, 2019, Gearhart-Marshall received a copy of Plaintiff's resume, transcripts, DD214, and VA Preference Letter. *Id.* ¶ 60. Gearhart-Marshall was informed that Plaintiff was a "CPS Vet and eligible for non-competitive placement/hire." *Id.* Gearhart-Marshall is responsible for reassigning BATs who fail the PTT. *Id.* ¶ 61. Gearhart-Marshall stated that, it was "[her] understanding that [Plaintiff] only wanted consideration for a core-series position." *Id.* A "core series" position includes the special agent, diversion investigator, forensic chemist, and intelligence research specialist positions. *Id.* ¶ 62.

On January 7, 2020, Will Kimbell, former Section Chief, Special Agent Services Section, emailed Gearhart-Marshall "to try to identify placement options to a PATCO position" for Plaintiff. *Id.* ¶ 66. Gearhart-Marshall stated that she typically considers dismissed BATs for PATCO positions but did not do so for Plaintiff until requested by Kimbell to expand her search. *Id.*

After many requests, on or around January 24, 2020, SA Sampson gave Plaintiff the contact information for Tangela McBride, a DEA Human Resources Specialist. *Id.* ¶ 68. When Plaintiff asked McBride about a new position within DEA, McBride stated she did not know and that she only deals with disciplinary issues. *Id.* McBride also told Plaintiff that she could not put him in contact with anyone in HR, but his resume was being sent around. *Id.*

On January 31, 2020, Special Agent in Charge Jesse Fong terminated Plaintiff's employment with the DEA. *Id.* ¶¶ 70, 72. Plaintiff alleges that Fong learned of Plaintiff's EEO complaint before issuing the termination memo. *Id.* ¶ 70. When Fong met with Plaintiff and informed Plaintiff that he was terminated, Plaintiff requested to resign in lieu of termination because he was still waiting to hear about reassignment. *Id.* ¶ 72.

8

On February 4, 2020, Plaintiff amended his EEO complaint to include additional instances of discrimination based on his disability. *Id.* ¶ 71.

Plaintiff failed two more PTTs for a Special Agent position on March 11 and April 13, 2021. *Id.* ¶¶ 73, 74. SA Sampson observed both tests, and graded Plaintiff's 300-meter sprint in April, for which Plaintiff missed the cutoff by two seconds despite having competed such a sprint within the time three days prior. *Id.* ¶ 74.

In September 2022, an administrative court granted the DEA's Motion for Summary Judgment on the EEOC complaint, to which the DOJ filed a Notice of Acceptance in November 2022. *Id.* ¶ 75. Plaintiff alleges that DOJ conceded Plaintiff had a disability for the purposes of the Rehabilitation Act in this Notice. *Id.* After Plaintiff appealed, the Office of Federal Operations of the EEOC upheld the Order of Summary Judgement and Dismissal in a March 12, 2025 decision. *Id.* ¶ 76.

### B. Procedural Background

On June 10, 2025, Plaintiff filed his original Complaint. Dkt. 1. On July 30, 2025, Plaintiff filed his first Amended Complaint. Dkt. 7. On October 17, 2025, Plaintiff filed his second Amended Complaint. Dkt. 26.

On December 1, 2025, Defendants filed their Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction and Memorandum in Support. Dkts. 29, 30. On December 15, 2025, Plaintiff filed his Opposition. Dkt. 32. On December 23, 2025, Defendants filed their Reply. Dkt. 35.

### II. LEGAL STANDARD

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.* When evaluating a motion filed under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### III. ANALYSIS

In his Amended Complaint, Plaintiff asserts four claims against all Defendants: (i) discrimination based upon disability under the Rehabilitation Act; (ii) hostile work environment; (iii) intentional infliction of emotional distress; and (iv) negligent infliction of emotional distress. Dkt. 26. In their Motion to Dismiss, Defendants argue that the emotional distress claims (Counts III and IV) are barred by the statute of limitations, and that, even if they were not, they fail to state a claim. Dkt. 30 at 14, 15. Plaintiff argues in his Opposition that equitable tolling should apply but ultimately consents to dismissal of those counts. Dkt. 32 at 1. Therefore, with the Plaintiff's consent, this Court will dismiss Counts III and IV, leaving Counts I and II, for which Plaintiff has contested the Motion to Dismiss, arguing he has sufficiently pleaded claims. *Id.* The Court will analyze each argument in turn.

### A. Disability Discrimination

In Count I, Plaintiff asserts a claim for Discrimination Based on Disability under the Rehabilitation Act. Dkt. 26 ¶ 79. The Rehabilitation Act establishes that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Claims for discrimination under the Rehabilitation Act are reviewed under the *McDonnell Douglas* burden-shifting framework. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Perry v. Comput. Scis. Corp.*, 429 F. App'x 218, 219–20 (4th Cir. 2011). Under that framework, Plaintiff may plausibly allege discrimination by alleging facts supporting a *prima facie* case. *See Perry*, 429 F. App'x at 220. To establish this *prima facie* case, Plaintiff must show that: (1) he is disabled; (2) he was otherwise qualified for the position; and (3) he suffered an adverse employment action solely on the basis of his disability. *See id.* (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)). But Plaintiff is not required to establish a *prima facie* case to state a claim and may instead establish a reasonable inference of discrimination. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15 (2002) (noting that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement"); *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (discussing whether allegations are sufficient to support a reasonable inference of discrimination sufficient to support a motion to dismiss).Defendants contest the first two elements of the *prima facie* case, both of which this Court finds sufficient to grant the motion to dismiss.

For the purposes of the Rehabilitation Act,[4] a person with a disability is one who: "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." *Hooven-Lewis v. Caldera*, 249 F.3d 259, 269 (4th Cir. 2001).  Major life activities as defined by the Act "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A); *See also Gwaltney v. DeJoy*, 2024 WL 4122032, at *4 (E.D. Va. Sep. 5, 2024).  Major life activities also include the operation of a major bodily function including "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."   42 U.S.C. § 12102(2)(B).

In this case, Plaintiff alleges conclusorily that his disabilities "can impair many of his major life functions" but does not allege how the purported disabilities "substantially limit one or more major life activities."  Dkt. 26 ¶ 6; *Gwaltney,* 2024 WL 4122032 at *4 (holding that plaintiff failed to sufficiently plead he had a disability for the purposes of the Rehabilitation Act because he did not allege how the condition "substantially limits one or more life activities").  Although Plaintiff alleges that he has been "diagnosed with physical disabilities connected with orthopedic injuries," he does not specifically connect these purported disabilities to the statutory requirements.   Dkt 26 ¶ 6.  Relatedly, Plaintiff alleges he suffers from "fluctuating levels of chronic pain" from military service-tied injuries but offers no details on what those injuries were, when they were suffered or

---

[4] The Fourth Circuit "treats claims under the Rehabilitation Act and the ADA as the same," meaning that they can be "combined for analytical purposes because the analysis is substantially the same." *Koon v. North Carolina,* 50 F.4th 398, 403 n. 2 (4th Cir. 2022) (quoting *Seremeth v. Bd. of Cnty. Comm'rs*, 673 F.3d 333, 336 n.1 (4th Cir. 2001)).  Thus, this Court will analyze ADA cases as well as Rehabilitation Act cases in interpreting the Rehabilitation Act's meaning.

how they substantially limit one or more major life activities.  *Id.* ¶ 13.  Courts recognize that what a layperson may understand as a disability does not suffice to establish a disability under the ADA or Rehabilitation Act.  *See Shiflett v. GE Fanuc Automation Corp.*, 960 F. Supp. 1022, 1034 (W.D. Va. 1997) ("Not all individuals who wear hearing aids are necessarily disabled, or, even if they are, this is not something that would be obvious to a lay person. Hence, knowledge of a hearing impairment is not tantamount to knowledge of a disability, much less knowledge that an accommodation is needed.").

The EEOC's regulations have clarified that the term "substantially limits" is to be "construed broadly," and "expressly provide that 'effects of an impairment *lasting or expected to last fewer than six months* can be substantially limiting' for purposes of proving an actual disability."  *Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 329 (4th Cir. 2014) (emphasis in original) (quoting 29 C.F.R. § 1630.2(j)).  But even under this broad construction, Plaintiff's claims fail to rise to the level of plausibility.  Plaintiff neither alleges how long he has suffered from the purported disability nor whether it is temporary or permanent.  Plaintiff suggests that his alleged disabilities have at times made it more difficult for him to exercise, including with respect to the PTT, but fails to specify any temporal details or history beyond that he told Dr. Kiselica "he had a history of lower back pain."  Dkt. 26 ¶ 20, 25.  Courts draw "all reasonable inferences" in favor of plaintiffs, but Plaintiff here fails to plead sufficient facts for this Court to make reasonable inferences reaching the level of plausibility, leaving "the court to guess how the injury" has limited major life activities.  *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 548 (E.D. Va. 2022).  Therefore, the claim will be dismissed for failing to sufficiently allege how the alleged disabilities substantially limit one or more major life activities.

Plaintiff's claim also fails to survive Defendant's motion to dismiss by failing to sufficiently plead that he was "otherwise qualified for the position" as required under the Rehabilitation Act. *See Hooven-Lewis*, 249 F.3d at 267. The Fourth Circuit has held that plaintiffs are otherwise qualified if they can (1) "perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue" and "(2) if not, whether "any reasonable accommodation by the employer would enable [her] to perform those functions." *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994). To establish this portion, Plaintiff conclusorily pleads that he is "an individual who met the essential qualifications and could perform the essential functions of a DEA agent and thus was a qualified individual with a disability under the meaning of the Rehabilitation Act." Dkt. 26 ¶ 80. Plaintiff is merely regurgitating the necessary elements without alleging any facts. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Plaintiff argues in his Opposition that because he "applied for a position with DEA [and] was accepted into the program," he could evidently perform the "essential functions" of the role. Dkt. 32 at 4. However, Plaintiff's Amended Complaint also acknowledges that the PTT (which he failed several times) is "part of the employment application process," indicating he is not necessarily "otherwise qualified." Dkt. 26 ¶ 38. As Defendants argue, DEA agents "plan and conduct investigations relating to suspected violations of federal narcotics and dangerous drug laws," and due to the "nature of a DEA Special Agent's work, applicants and employees must meet certain physical requirements." Dkt. 30 at 11 (citing *Katz v. Garland*, 2023 WL 11990807, at *2 (E.D. Va. Mar. 16, 2023), *aff'd*, 2024 WL 399099 (4th Cir. Feb. 2, 2024)).

Nor does Plaintiff make any coherent allegations about "reasonable accommodations" that would have allowed him to perform the essential functions of the role. Instead, Plaintiff simply

14

alleges (in a now-voluntarily-dismissed claim for negligent infliction of emotional distress) that his "service-connected disabilities entitl[ed] the Plaintiff to reasonable accommodations during the employment process not to exacerbate these conditions." Dkt. 26 ¶ 108. Indeed, Plaintiff alleges that the DEA made at least some effort to accommodate Plaintiff by allowing him to retake the PTT several times and granting him a medical delay. *Id.* ¶¶ 22, 36, 42, 57-58, 73, 74. Therefore, Plaintiff's claim will also be dismissed for failing to sufficiently plead he was "otherwise qualified" for the position, as the Rehabilitation Act demands.

### B. Hostile Work Environment

In order to state a hostile work environment claim, Plaintiff must plead the following elements: "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (citing *Brown v. Perry*, 184 F.3d 388, 393 (4th Cir.1999)). Because Plaintiff has failed to sufficiently plead that he has a disability under the Rehabilitation Act for the reasons articulated previously, his hostile work environment claim here must fail to survive the motion to dismiss as well. *See Koon,* 50 F.4th at 403 n. 2.

Additionally, Plaintiff's claims also fail to sufficiently allege that the purported harassment was "sufficiently severe and pervasive to alter a term, condition, or privilege of employment." *Fox,* 247 F.3d at 177. As Plaintiff notes, to satisfy the "severe and pervasive" element, Plaintiff "must show that [his] work environment was both subjectively and objectively hostile." *Coleman v. Kettler Mgmt.*, 2022 WL 17585780, at *6 (E.D. Va. Dec. 12, 2022) (citing *Fox*, 247 F.3d at 178). Under the objective prong of this inquiry, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

15

offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Exchanges in the workplace that are merely "disrespectful, frustrating, critical, and unpleasant" are insufficient to create a hostile work environment. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

The Fourth Circuit has further advised that "general allegations" regarding a hostile work environment without "accounts of specific dates, times or circumstances" are insufficient to state a hostile work environment claim. *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994); *see also Carroll v. Amazon Data Servs., Inc.*, 2022 WL 3161895, at *6 (E.D. Va. Aug. 8, 2022) ("Failure to plead at least modest details that would allow the Court to assess the frequency and severity of allegedly harassing conduct can warrant dismissal of a hostile work environment claim."); *Jones v. HCA*, 16 F. Supp. 3d 622, 630-31 (E.D. Va. 2014) (dismissing a hostile work environment claim where the plaintiff failed to plead any specific allegations that could "shed any light into [the] severity or frequency" of the purportedly harassing conduct).

Here, Plaintiff does point to several specific instances that go beyond "general allegations," including alleging that specific dates and circumstances when Special Agents and health care providers "did not believe" him about his pain[5] or told him "it probably wouldn't look good for

---

[5] Although the parties did not address this issue (and so it is not a basis for the Court's determination here), the Court has some concerns regarding whether a doctor's medical diagnosis with respect to the seriousness of Plaintiff's pain can constitute discrimination for purposes of the Rehabilitation Act. As the Fourth Circuit has recognized, to treat or assess an alleged disability, "health care providers must necessarily make medical decisions based on that disability" but that "does not give rise to a discrimination claim." *Doe v. Univ. of Md. Med. Sys. Corp.*, 2025 WL 3553026, at *7 (4th Cir. Dec. 11, 2025). Other courts have similarly rejected ADA or Rehabilitation Act claims premised on medical determinations. *See, e.g., Fitzgerald v. Corrections Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (affirming summary judgment where plaintiff's "principal basis" for his claim against a doctor was because of the doctor's recommendation to "do nothing" and plaintiff would not have been "otherwise qualified" for treatment in the

16

[him] if he didn't sign the form or take the test." Dkt. 26 ¶¶ 31, 33, 35. Plaintiff also argues that he alleges a "litany of DEA's efforts to frustrate Plaintiff's efforts to qualify for employment." Dkt. 32 at 5 (citing *Id.* ¶¶ 44-62). Plaintiff argues that the allegations "raise both a plausible and logical inference that DEA pervasively discriminated against Plaintiff who was otherwise qualified but disabled." *Id.* at 6.

However, Plaintiff's allegations do not come close to the level of severity and pervasiveness required to adequately state a claim. The exchanges that Plaintiff alleges may be unpleasant—for example, not being believed about a purported disability, being told that "medical recycle is a difficult process to do," and that "people have taken the fitness test in worse condition that what [he was] in"—but under *Khoury,* being unpleasant is not sufficient to satisfy the objective component of the inquiry. Dkt. 26 ¶¶ 26, 30, 31. In total, the verbal conduct alleged amounts to a few comments over a period of a few days and being asked to take the PTT test (while giving him one of many retakes) in cold and slippery conditions. Dkt. 26 ¶¶ 58. But as Defendants argue, "DEA Special Agents must be ready to perform in all types of conditions—including at non-preferred locations and in poor weather." Dkt. 30 at 13. Therefore, because Plaintiff has failed to sufficiently allege that "[his] work environment was both subjectively and objectively hostile," this claim will be dismissed. *Kettler,* 2022 WL 17585780, at *6.

***

---

absence of his disability); *Powell v. Columbus Medical Enterprises, LLC*, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) (affirming dismissal of ADA claim where plaintiff based claim on doctor's refusal to change his medications); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (concluding that ADA "cannot be based on medical treatment decisions" where plaintiff alleged inadequate medical care for his diabetes); *Hollinger v. Reading Health Sys.*, 2017 WL 429804, at *8 n.9 (E.D. Pa. Jan. 31, 2017) (dismissing ADA claim on grounds that plaintiff failed to allege discrimination, noting "[a]ny allegations that the hospital failed to properly treat plaintiff, or discharged him too early, sound in medical negligence—not discrimination").

Although Plaintiff has already twice amended his complaint, this Court did not rule on the claims in either of the prior versions.  Moreover, the Court cannot say at this stage that Plaintiff cannot add further allegations to correct the deficiencies identified here.  Accordingly, the Court will permit further amendment.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 29) is GRANTED;

FURTHER ORDERED that Count I is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Count II is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Counts III and IV are DISMISSED with Plaintiff's consent WITH PREJUDICE.

FURTHER ORDERED that Plaintiff has LEAVE TO AMEND and is DIRECTED to file any Amended Complaint within THIRTY (30) DAYS from the issuance of this Memorandum Opinion. Plaintiff is WARNED that this will be his final opportunity to amend and that failure to comply with this deadline may result in dismissal of his case pursuant to Federal Rule of Civil Procedure 41.

It is SO ORDERED.

Alexandria, Virginia
August 4, 2026

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge